# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

WINDELS MARX LANE & MITTENDORF, LLP
William C. Cagney (WCC-6025)
120 Albany Street Plaza
New Brunswick, New Jersey 08901
(732) 846-7600
wcagney@windelsmarx.com

*Attorneys for Lead Plaintiffs*

--------------------------------------------------------x
IN RE HOVNANIAN ENTERPRISES, INC.   :  Civil Action No. 2:08-cv-00999
SECURITIES LITIGATION               :  (SDW) (MCA)
                                           :
                                           :  CLASS ACTION
                                           :
                                           :  Document Electronically Filed
                                           :
                                           :
--------------------------------------------------------x

## MEMORANDUM OF LAW IN SUPPORT OF
## FINAL APPROVAL OF THE PROPOSED SETTLEMENT AND PLAN OF
## ALLOCATION AND CERTIFICATION OF THE SETTLEMENT CLASS

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................ 1

FACTUAL BACKGROUND ................................................................................. 3

ARGUMENT ........................................................................................................... 3

I.   THE PROPOSED SETTLEMENT IS FAIR, REASONABLE, AND ADEQUATE  AND
     SHOULD BE APPROVED ...................................................................... 3

     A.   The Law Favors and Encourages Settlements ...................................... 3

     B.   The Role of the Court in Determining Whether to Approve a Class Action
          Settlement ....................................................................................... 3

     C.   The Settlement Is Presumptively Fair .................................................. 5

     D.   The Settlement Satisfies the Third Circuit Criteria for Approval as
          Fair, Reasonable, and Adequate .......................................................... 7

          1.   Continued Pursuit of this Action would be Complex, Expensive, and
               Prolonged .............................................................................. 8

          2.   The Reaction of Settlement Class Members Supports Approval of the
               Settlement ............................................................................ 10

          3.   The Stage of the Proceedings and the Amount of Discovery Completed
               Supports Approval of the Settlement ........................................ 12

          4.   Plaintiffs Face Risks Establishing Liability ................................ 13

          5.   Plaintiffs Face Risks Establishing Damages and Causation .......... 15

          6.   Plaintiffs Face Risks of Maintaining the Class Action Through Trial...... 18

          7.   The Ability of Defendants to Withstand a Greater Judgment............... 19

          8.   The Range of Reasonableness of the Settlement in Light of the Best
               Possible Recovery and all the Attendant Risks of Litigation Supports
               Approval of the Settlement .................................................... 19

II.  THE NOTICE TO THE SETTLEMENT CLASS SATISFIED DUE PROCESS ............. 22

III. THE PLAN OF ALLOCATION IS FAIR AND REASONABLE AND SHOULD BE
     APPROVED ......................................................................................... 24

IV.   CERTIFICATION OF A SETTLEMENT CLASS IS APPROPRIATE AND WARRANTED ........................................................................................ 27

     A.    The Requirements of Fed. R. Civ. P. 23(a) are Satisfied ..................................... 26

          1.    Numerosity .................................................................................. 28

          2.    Commonality .............................................................................. 29

          3.    Typicality .................................................................................. 29

          4.    Adequacy of Representation ..................................................... 30

     B.    This Action Meets the Requirements of Fed. R. Civ. P. 23(b)(3) ...................... 29

          1.    Common Questions of Law and Fact Predominate ................................. 31

          2.    A Class Action is Superior to Other Available Methods for the Fair and Efficient Adjudication of this Action .................................................. 32

CONCLUSION ............................................................................................................. 33

# TABLE OF AUTHORITIES

## Cases

*Aetna Inc. Sec. Ltig.,*
    Civ. A. MDL 1219, 2001 U.S. Dist. LEXIS 68 (E.D. Pa. Jan. 4, 2001)......................... 26

*Amchem Prod., Inc.* v. *Windsor,*
    521 U.S. 591 (1997)........................................................................................ 30, 31, 33

*Anixter v. Home-Stake Prod. Co.,*
    77 F.3d 1215 (10th Cir. 1996) ...................................................................................... 15

*AUSA Life Ins. Co. v. Ernst & Young,*
    39 Fed. App'x. 667 (2d Cir. 2002) ................................................................................ 21

*Backman v. Polaroid Corp.,*
    910 F.2d 10 (1st Cir. 1990)..................................................................................... 15, 21

*Basic Inc.* v. *Levinson,*
    485 U.S. 224 (1988)........................................................................................................ 14

*Biben v. Card,*
    [1991-1992 Transfer Binder] Fed. Sec. L. Rep. (CCH) , ¶96,512
    (W.D. Mo. Dec. 10, 1991) ............................................................................................. 17

*Bogosian v. Gulf Oil Corp.,*
    561 F.2d 434 (3d Cir. 1977).......................................................................................... 31

*Brosious v. Children's Place Retail Stores,*
    189 F.R.D. 138 (D.N.J. 1999).................................................................................. 30, 31

*Cannon v. Cherry Hill Toyota, Inc.,*
    184 F.R.D. 540 (D.N.J. 1999)........................................................................................ 30

*Carson v. American Brands, Inc.,*
    450 U.S. 79 (1981).......................................................................................................... 4

*Consolo Edison, Inc. v. Northeast Utils.,*
    332 F. Supp. 2d 639 (S.D.N.Y. 2004)........................................................................... 23

*Diamond Chem. Co. v. Akzo Nobel Chems. B. V,*
    205 F.R.D. 33 (D.D.C. 2001)......................................................................................... 23

*Eichenholtz v. Brennan,*
    52 F.3d 478 (3d Cir. 1995)............................................................................................... 8

*Eisenberg v. Gagnon,*
    766 F.2d 770 (3d Cir. 1985), *cert. denied,*
    *Wasserstorm v. Eisenberg,* 474 U.S. 946 (1985)................................... 28, 31, 33

*Fickinger v. C1. Planning Corp.,*
    646 F. Supp. 622 (E.D. Pa. 1986) ...................................................... 4

*Fisher Bros. Inc. v. Mueller Brass Co.,*
    630 F. Supp. 493 (E.D. Pa. 1985) ...................................................... 4

*Girsh v. Jepson,*
    521 F.2d 153 (3d Cir. 1975)........................................................ 7, 8, 13, 19

*Gordon v. Hunt,*
    117 F.R.D. 58 (S.D.N.Y. 1987) ...................................................... 23

*Herman & MacLean v. Huddleston,*
    459 U.S. 375 (1983)...................................................................... 14

*Holmes v. Continental Can Co.,*
    706 F.2d 1144 (11th Cir. 1983) ...................................................... 26

*In re AT&T Corp. Sec. Litig.,*
    455 F.3d 160 (3d Cir. 2006)........................................................... 20

*In re BankAmerica Corp. Sec. Litig.,*
    210 F.R.D. 694 (E.D. Mo. 2002) .................................................... 19

*In re Biogen Sec. Litig.,*
    179 F .R.D 25 (D. Mass. 1997)....................................................... 21

*In re Broadcom Corp. Sec. Litig.,*
    No. 01-275, 2005 U.S. Dist. LEXIS 41976 (C.D. Cal. Sept. 12,2005) ........................... 25

*In re Cendant Corp. Litig.,*
    264 F.3d 201 (3d Cir. 2001), *cert. den. sub nom.,*
    *Markv. Cal. Pub. Employees' Ret. Sys.,*
    535 U.S. 929 (2002)................................................................ passim

*In re Computron Software, Inc.,*
    6 F. Supp. 2d 313 (D.N.J. 1998) .................................................. 16, 25

*In re Corel Corp. Sec. Litig.,*
    293 F. Supp. 2d 484 (E.D. Pa. 2003) ........................................... 11, 26

*In re Datatec Sys., Inc. Sec. Litig.,*
    No. 04-cv-525, 2007 WL 4225828 (D.N.J. Nov. 28, 2007) ........................... 24

*In re DVI Sec. Litig.*,
　　No. 03-5336, 2005 U.S. Dist. LEXIS 17286 (E.D. Pa. May 31, 2005)............................ 13

*In re General Instrument Sec. Litig.*,
　　209 F. Supp. 2d 423 (E.D. Pa. 2001) ................................................................................ 24

*In re General Motors Corp. Pick-Up Truck Fuel Tank Prod. Liab. Litig.*,
　　55 F.3d 768 (3d Cir. 1995)............................................................................................ 3, 8

*In re Global Crossing Sec. & ERISA Litig.*,
　　225 F.R.D. 436 (S.D.N.Y. 2004) ...................................................................................... 24

*In re Health Management, Inc. Sec. Litig.*,
　　No. 96- CV-889, 1999 U.S. Dist. LEXIS 22729 (E.D.N.Y. Sept. 25, 1999) .................. 21

*In re IKON Office Solutions, Inc.*,
　　194 F.R.D. 166 (E.D. Pa. 2000).................................................................................... 8, 19

*In re Lucent Tech., Inc. Sec. Litig.*,
　　307 F. Supp. 2d 633 (D.N.J. 2004) .................................................................................. 26

*In re Paine Webber Ltd. P'ships Litig.*,
　　171 F.R.D. 104 (S.D.N.Y. 1997) ...................................................................................... 24

*In re Pharmaprint, Inc. Sec. Litig.*,
　　No. 00-CV-00061, 2002 U.S. Dist LEXIS 19845 (D.N.J. Apr. 17, 2002) ....................... 28

*In re PNC Finance Servo Group, Inc., Sec. Litig.*,
　　440 F. Supp. 2d 421 (W.D. Pa. 2006).............................................................................. 16

*In re Prudential Ins. Co. Am. Sales Practice Litig.*,
　　148 F.3d. 283 (3d Cir. 1998)..................................................................................... passim

*In re Prudential Ins. Co. of Am. Sales Practices Litig.*,
　　962 F. Supp. 450 (D.N.J. 1997) ....................................................................................... 27

*In re Ravisent Tech., Inc. Sec. Litig.*,
　　No. 00 CV 1014, 2005 U.S. Dist. LEXIS 6680 (E.D. Pa. Apr. 18, 2005)................ passim

*In re Rent-Way Sec. Litig.*,
　　305 F. Supp. 2d 491 (W.D. Pa. 2003).............................................................................. 11

*In re Res. Am. Sec. Litig.*,
　　202 F.R.D. 177 (E.D. Pa. 2001).................................................................................. 29, 30

*In re Safety Components Int'l, Inc. Sec. Litig.*,
　　166 F. Supp. 2d 72 (D.N.J. 2001) ........................................................................ 9, 13, 19

*In re Suprema Specialties, Inc. Sec. Litig.,*
No. 02-168, 2008 WL 906254 (D.N.J. March 31, 2008)................................................ 24

*In re Warfarin Sodium Antitrust Litig.,*
391 F.3d 516 (3d Cir. 2004).................................................................................. 5, 18, 19

*In re Warner Comm'n Sec. Litig.,*
618 F. Supp. 735 (S.D.N.Y. 1985) .................................................................................. 16

*In re Wireless Tel. Fed. Cost Recovery Fees Litig.,*
396 F.3d 922 (8th Cir. 2005) ......................................................................................... 19

*Kincade v. General Tire & Rubber Co.,*
635 F.2d 501 (5th Cir. 1981) ......................................................................................... 26

*Krangel v. Golden Rule Resources, Inc.,*
194 F.R.D. 501 (E.D. Pa. 2000).............................................................................. 3, 9, 12, 16

*Krinsk v. Fund Asset Mgmt., Inc.,*
715 F. Supp. 472 (S.D.N.Y. 1988), *aff'd,*
875 F.2d 404 (2d Cir. 1989)........................................................................................... 22

*Kurz v. Philadelphia Elec. Co.,*
96 F.3d 1544 (3d Cir. 1996).......................................................................................... 15

*Landy v. Amsterdam,*
815 F.2d 925 (3d Cir. 1987).......................................................................................... 22

*Lewy v. Weinberger,*
464 U.S. 818 (1983)......................................................................................................... 3

*Mashburn v. Nat'l Healthcare, Inc.,*
684 F. Supp. 660 (M.D. Ala. 1988) ............................................................................... 22

*Moskowitz v. Lopp,*
128 F.R.D. 624 (E.D. Pa. 1989)..................................................................................... 29

*Neuberger v. Shapiro,*
110 F. Supp. 2d 373 (E.D. Pa. 2000) .............................................................................. 8

*Petrovic v. Amoco Oil Co.,*
200 F.3d 1140 (8th Cir. 1999) ..................................................................................... 23

*Radol v. Thomas,*
772 F.2d 244 (6th Cir. 1985) ......................................................................................... 21

*Robbins v. Koger Prop.,*
116 F.3d 1441 (11th Cir. 1997) ..................................................................................... 15

*Robbins v. Koger Prop.,*
    129 F.3d 617 (11th Cir. 1997) ..................................................... 21

*Rubenstein v. Republic Nat'l Life Ins. Co.,*
    74 F.R.D. 337 (N.D. Tex. 1976) .................................................. 26

*Santa Fe Indus., Inc. v. Green,*
    430 U.S. 462 (1977)..................................................................... 14

*Scottish Heritable Trust, PLC v. Peat Marwick Main & Co.,*
    81 F.3d 606 (5th Cir. 1996), *cert. denied,*
    519 U.S. 869 (1996)..................................................................... 15

*Slomovics v. All For A Dollar, Inc.,*
    906 F. Supp. 146 (E.D.N.Y. 1995) .............................................. 10

*Taft v. Ackermans,*
    No. 02- CV-7951, 2007 U.S. Dist. LEXIS 9144 (S.D.N.Y. Jan. 31, 2007) .............. 12, 17

*United States v. 412.93 Acres of Land,*
    455 F.2d 1242 (3d Cir. 1972)....................................................... 16

*Vargas v. Calabrese,*
    634 F. Supp. 910 (D.N.J. 1986) ................................................... 28

*Weikel v. Tower Semiconductor, Ltd.,*
    183 F.R.D. 377 (D.N.J. 1988)....................................................... 33

*Weiss v. York Hosp.,*
    745 F.2d 786 (3d Cir. 1984).......................................................... 28

*Welch v. Bd. Of Dir. of Wildwood Golf Club,*
    146 F.R.D. 131 (W.D. Pa. 1993) ................................................. 28

*Wetzel v. Liberty Mut. Ins. Co.,*
    508 F.2d 239 (3d Cir. 1975), *cert. denied,*
    *Liberty Mut. Ins. Co. v. Wetzel,*
    421 U.S. 1011 (1975)............................................................. 28, 30

*Winkler v. NRD Mining, Ltd.,*
    198 F.R.D. 355 (E.D.N.Y. 2000) ................................................. 21

*Zinberg v. Washington Bancorp, Inc.,*
    138 F.RD. 397 (D.N.J. 1990)................................................... 28, 29

**Statutes**

15 U.S.C. § 77z-1(a)(7)................................................................................................ 21
15 U.S.C. § 78j(b) ...................................................................................................... 13
15 U.S.C. § 78u-4(e)(I) .............................................................................................. 26
15 U.S.C. §78t(a) ........................................................................................................ 13
17 C.F.R. § 240.10b-5................................................................................................. 13

**Rules**

Fed. R. Civ. P. 23(a) ........................................................................................... passim
Fed. R. Civ. P. 23(b)(3)....................................................................................... passim
Fed. R. Civ. P. 23(c)(1)(C) ......................................................................................... 18
Fed. R. Civ. P. 23(c)(2)................................................................................................ 22
Fed. R. Civ. P. 23(c)(2)(B) .......................................................................................... 22
Fed. R. Civ. P. 23(e) ........................................................................................... passim

## PRELIMINARY STATEMENT

Lead Plaintiff Herbert Mankofsky ("Mankofsky"), and putative plaintiff Jeffrey S. Buffoni Revocable Trust (the "Buffoni Trust") are pleased to present to the Court for final approval the proposed settlement (the "Settlement") of this securities fraud class action litigation (the "Action") with Defendants Hovnanian Enterprises, Inc. ("Hovnanian"), Ara Hovnanian, J. Larry Sorsby and Bruce Robb (collectively referred to hereinafter as the "Defendants") for Four Million Dollars ($4,000,000.00) in cash plus accrued interest (the "Settlement").[1]

As set forth in the Declaration of Lionel Z. Glancy in Support of Plaintiffs' Motion for Final Approval of Settlement and Plan of Allocation, and Certification of a Settlement Class and Application of Plaintiffs' Counsel for an Award of Attorneys' Fees and Reimbursement of Expenses (the "Glancy Decl."), achieving this excellent result required Plaintiffs' Counsel to overcome significant risks in prosecuting the Action. In particular, the hurdles of pleading and proving liability and damages under the Private Securities Litigation Reform Act of 1995 (the "PSLRA") posed daunting challenges to Plaintiffs' Counsel when they undertook the prosecution of this Litigation. Even assuming Plaintiffs would be successful in defeating a motion to dismiss, critical issues such as Defendants' scienter, loss causation, and damages would be hotly contested at summary judgment and trial. The merit of this Settlement is supported by the significant recovery as compared to the challenges inherent in continued prosecution of this action.

Moreover, the Settlement was achieved only after Plaintiffs' Counsel conducted extensive legal and factual investigations into the events and circumstances underlying the claims asserted in the action, thoroughly researched the law pertinent to the claims against

---

[1] Unless otherwise defined herein, capitalized terms utilized herein shall have the meanings attached to them in the Stipulation of Settlement (the "Stipulation").

Defendants and potential defenses thereto, consulted with experts, reviewed thousands of pages of documents, interviewed several key witnesses, and engaged in arm's-length settlement negotiations which culminated in a successful mediation before the Honorable Nicholas Politan (Ret.). Thus, the Settlement was reached only after Plaintiffs' Counsel attained a thorough understanding of the strengths and weaknesses of the claims against Defendants. Having done so, Plaintiffs were in an optimal position to negotiate and evaluate the terms of the proposed Settlement.

The Settlement Class Members' favorable reaction to the Settlement – which many courts ascribe as the most important factor in assessing its fairness and adequacy – also supports its approval. The background of the Settlement and the reasons that Plaintiffs entered into it were described in detail in the Court-approved Notice of Pendency and Proposed Settlement of Class Action and Settlement Thereon (the "Notice"). Although over 73,000 Notices were sent out to potential Settlement Class members, ***not one Settlement Class member objected to the adequacy, reasonableness or fairness of the Settlement or to the application for attorneys' fees***. *See* Declaration of Jennifer M. Keough Regarding Notice Dissemination and Publication, attached as Exhibit D to Glancy Decl. (the "Keough Decl.") at ¶10. Only three potential Settlement Class members asked to be excluded from the Settlement. Keough Decl. at ¶9 & Ex. C attached thereto. Such an overwhelmingly positive reaction to the Settlement bespeaks its fairness, reasonableness and adequacy.

Additionally, the Plan of Allocation provides for *pro rata* treatment of Settlement Class Member claims based on when each member bought and sold their shares, reflecting the amount of artificial inflation incorporated in Hovnanian's share prices at various points during the Settlement Class Period. A plan which provides recovery in proportion to the extent of

2

Settlement Class Members' alleged damages is fair and reasonable and should be approved by the Court.

## FACTUAL BACKGROUND

For the sake of brevity, Plaintiffs' Counsel respectfully refer the Court to the Glancy Decl. for a detailed description of the history of the litigation, the claims asserted, the related motion practice, the extensive and intensive investigation undertaken, the negotiations and substance of the Settlement and the substantial risks and uncertainties presented by and overcome in this litigation, which demonstrate that the Settlement and the application for attorneys' fees and expenses should be approved. This memorandum will focus on applicable legal standards for approval of a proposed class action settlement under Rule 23(e) of the Federal Rules of Civil Procedure.

## ARGUMENT

## I.      THE PROPOSED SETTLEMENT IS FAIR, REASONABLE, AND ADEQUATE AND SHOULD BE APPROVED

### A.      The Law Favors and Encourages Settlements

Compromises of disputed claims are favored by the courts. *Lewy v. Weinberger,* 464 U.S. 818, 822 (1983); *In re Prudential Ins. Co. Am. Sales Practice Litig.*, 148 F.3d. 283, 317 (3d Cir. 1998). This policy is particularly strong in complex class action litigation. *See, e.g., Krangel v. Golden Rule Resources, Inc.,* 194 F.R.D. 501, 504 (E.D. Pa. 2000) ("[t]he law favors settlement, particularly in class actions and other complex cases where substantial judicial resources can be conserved by avoiding formal litigation").

### B.      The Role of the Court in Determining Whether to Approve a Class Action Settlement

Federal Rule of Civil Procedure 23(e) provides that "[a] class action shall not be dismissed or compromised without the approval of the court ...." *In re General Motors Corp.*

3

*Pick-Up Truck Fuel Tank Prod. Liab. Litig.,* 55 F.3d 768, 785 (3d Cir. 1995).  Before approving a class action settlement, a court must determine that it is "fair, adequate, and reasonable."  *In re Ravisent Tech., Inc. Sec. Litig.,* No. 00 CV 1014,2005 U.S. Dist. LEXIS 6680, at *22 (E.D. Pa. Apr. 18, 2005) (quoting Fed. R. Civil Procedure 23(e)).  However, while courts have the duty to "independently and objectively analyze the evidence and circumstances before it in order to determine whether the settlement is in the best interest of those whose claims will be extinguished," *In re Cendant Corp. Litig.,* 264 F.3d 201, 231 (3d Cir. 2001), *cert. den. sub nom., Markv. Cal. Pub. Employees' Ret. Sys.,* 535 U.S. 929 (2002), they must also "guard against demanding too large a settlement based on its view of the merits of the litigation; after all, settlement is a compromise, a yielding of the highest hopes in exchange for certainty and resolution."  *Prudential,* 148 F.3d at 317 (aff. in part, rev. in part).  Because compromise and settlement are favored, courts do not decide the merits or resolve unsettled legal questions when reviewing a proposed settlement.  *See Carson v. American Brands, Inc.,* 450 U.S. 79, 88 n.14 (1981) ("Courts judge the fairness of a proposed compromise by weighing the [P]laintiffs likelihood of success on the merits against the amount and form of the relief offered in the settlement ... They do not decide the merits of the case or resolve unsettled legal questions.").  Instead, the court is charged with reviewing the terms of the settlement to ensure that the agreement reached is fair, reasonable and adequate.

In determining the adequacy of a proposed settlement, the Court should ascertain whether the settlement is within a range that responsible and experienced attorneys could accept, considering all relevant risks.  *Fickinger v. C.I. Planning Corp.,* 646 F. Supp. 622, 630 (E.D. Pa. 1986).  That analysis "recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion."  *Fisher*

*Bros. Inc. v. Mueller Brass Co.,* 630 F. Supp. 493, 499 (E.D. Pa. 1985).  Furthermore, the Third

Circuit has held that in determining whether to approve a proposed settlement, a court may rely

on the judgment of experienced counsel and should avoid transforming the hearing on the

settlement into a trial on the merits.  *Id.* at 452.  Prior to entering into the Settlement, Plaintiffs'

Counsel considered numerous factors in deciding to recommend the Settlement, including, but

not limited to, the strength of the claims and possible defenses, the risks of establishing liability

and damages, and the risk of non-recovery.  Glancy Decl. ¶¶42-48.  Plaintiffs' Counsel, who

have extensive experience prosecuting securities class actions, concluded that the Settlement is

fair, reasonable, and adequate, and in the best interests of the Settlement Class.  *Id.* at ¶73.

## C.    The Settlement Is Presumptively Fair

A presumption of fairness attaches to a proposed settlement where: "(1) the settlement

negotiations occurred at arm's length; (2) there was sufficient discovery; (3) the proponents of

the settlement are experienced in similar litigation; and (4) only a small fraction of the class

objected."  *In re Warfarin Sodium Antitrust Litig.,* 391 F.3d 516, 535 (3d Cir. 2004) (citing

*Cendant,* 264 F.3d at 232 n. 18).

The proposed Settlement is entitled to a presumption of fairness because:

- The Settlement was negotiated at arm's length with the assistance of a well-respected mediator, the Honorable Nicholas Politan (Ret).  Glancy Decl. ¶27.

- Plaintiffs' Counsel diligently investigated and analyzed the events and issues pertaining to Lead Plaintiff's claims.  Prior to filing the initial, First and Second Amended Complaints, Plaintiffs' Counsel conducted an investigation that was far-ranging, and included: (a) analyzing Hovnanian's Class Period and pre-Class Period financial statements; (b) collecting and reviewing a comprehensive compilation of analyst reports and major financial news service reports on

5

Hovnanian; (c) consulting with damage experts regarding the extent of damages in the Action; (d) reviewing and analyzing certain public filings from the SEC; (e) reviewing and analyzing thousands of pages of public records filed in Lee County Florida; (f) reviewing pleadings in related litigation involving Hovnanian as well as pleadings involving particular credit unions involved with Hovnanian; (g) inspecting certain homes and neighborhoods which were the subject of this Action; (f) interviewing witnesses; (g) reviewing and analyzing reports disseminated by securities analysts; and (h) issuing FOIA requests to the National Credit Union Administration ("NCUA") and aggressively pursuing litigation against the NCUA up until the time the Settlement was achieved.  *Id*. at ¶ 26.

- Plaintiffs' Counsel are highly experienced and skilled practitioners in the field of securities class action litigation, successfully prosecuting such actions throughout the United States, and they recommend this Settlement to the Court as fair, reasonable, and adequate and in their opinion as in the best interests of the Settlement Class Members. *Id*. at ¶42, 49, 53.

- No objections to the proposed Settlement have been filed and only three requests for exclusion from the Settlement Class were made after over 73,000 Notices were disseminated and a summary notice published nationally in *Investor's Business Daily* as well as posted on Plaintiffs' Lead Counsel's website.  Keough Decl. 5, 9-10.

Plaintiffs' Counsel reached the Settlement only after thoroughly analyzing Plaintiffs' claims under the applicable law, briefing the motions to dismiss, considering the strength of the claims, the risks of establishing liability and damages, and the risk of non-recovery and engaging

in arm's-length mediation before Judge Politan. Glancy Decl. ¶¶26-27. Through these efforts, Plaintiffs' Counsel gained a thorough understanding of the legal and factual issues involved in the litigation. Consequently, Plaintiffs' Counsel strongly believe that the Settlement is in the best interests of the Settlement Class. Glancy Decl. ¶49.

Plaintiffs' Counsel, which have extensive experience prosecuting securities class actions, have concluded that the Settlement is fair, reasonable and adequate, and in the best interests of the Settlement Class and recommend and request its approval by the Court. *Id*. at 72. Moreover, that the key negotiations leading to this Settlement were supervised by Nicholas Politan, a well-respected former judge acting as mediator, clearly dispels any possible concern of collusion.

Plaintiffs respectfully submit that the Settlement easily meets all applicable standards for the presumption of fairness to apply.

### D.    The Settlement Satisfies the Third Circuit Criteria for Approval as Fair, Reasonable, and Adequate

In *Girsh v. Jepson*, 521 F.2d 153, 157 (3d Cir. 1975), the Third Circuit held that the following factors should be considered by a district court in determining whether a proposed settlement is fair, reasonable, and adequate and should therefore be approved, pursuant to Fed. R. Civ. P. 23(e):

(1)     [T]he complexity, expense and likely duration of the litigation;

(2)     [T]he reaction of the class to the proposed settlement;

(3)     [T]he stage of the proceedings and the amount of discovery completed;

(4)      [T]he risks of establishing liability;

(5)     [T]he risks of establishing damages;

(6)     [T]he risks of maintaining the class action through trial;

(7)     [T]he ability of the defendants to withstand a greater judgment;

(8)     [T]he range of reasonableness of the settlement fund in light of the best possible recovery; and

(9)     [T]he range of reasonableness of the settlement fund to the best possible recovery in light of the attendant risks of litigation.

*See also General Motors,* 55 F.3d at 785; *Eichenholtz v. Brennan,* 52 F.3d 478, 488 (3d Cir. 1995).

As demonstrated herein and in the Glancy Decl., the Settlement is an excellent result which easily satisfies all of the *Girsh* factors.

### 1.    <u>Continued Pursuit of this Action would be Complex, Expensive, and Prolonged</u>

Courts in this Circuit have long held that the complexity, expense and likely duration of litigation in a complex securities class action weigh in favor of approving a class action settlement. *Ravisent,* 2005 U.S. Dist. LEXIS 6680, at *24-25 (upholding settlement where continuing litigation would "likely require additional discovery, extensive pretrial motions practice (including summary judgment motions), a trial, and ... [a]bsent a settlement, this action likely would not be resolved for several additional years"); *see also Neuberger v. Shapiro,* 110 F. Supp. 2d 373, 378 (E.D. Pa. 2000) ("the prospect of complexity and additional costs encourages settlement approval").

In approving the settlement in *In re IKON Office Solutions, Inc.,* 194 F.R.D. 166, 179 (E.D. Pa. 2000), the district court noted:

> In the absence of a settlement, this matter will likely extend for months or even years longer with significant financial expenditures by both defendants and plaintiffs. This is partly due to the inherently complicated nature of large class actions alleging securities fraud: there are literally thousands of shareholders, and any trial on these claims would rely heavily on the development of a paper trail through numerous public and private documents.

As noted above, federal securities class actions by definition involve complicated issues of law and fact.[2]   Indeed, as set forth above and discussed in the Glancy Decl., this Action presents numerous complex issues of both fact and law, and presents significant obstacles to establishing liability and in proving damages.

In addition, although Plaintiffs' Lead Counsel invested significant resources and time conducting their investigation, Plaintiffs were subject to the PSLRA discovery stay during the pendency of Defendants' motions to dismiss, and were therefore precluded from conducting formal fact and expert discovery at that time.  Glancy Decl. ¶44.  Needless to say, depositions of representatives and employees of Hovnanian and each of the parties to the Settlement would be exceedingly time-consuming and expensive.   The expert phase of discovery would also be exceptionally expensive and time consuming.  Moreover, as each day passes, important evidence disappears as memories fade, computers are replaced, and documents are discarded in the ordinary course of business.  Following expert discovery, Defendants likely would file a motion for summary judgment, which would require several months to brief, argue and be resolved by the Court.  Assuming success in defeating summary judgment motions, completing a trial of this Action would then take many additional months, and would inevitably be followed by appeals -- this whole process possibly delaying any recovery by the Settlement Class for years.   Glancy Decl. ¶¶45-48.

A settlement at this juncture provides a substantial and tangible present recovery, without the attendant risk and delay of complex, expensive and prolonged litigation and trial.  *See In re Safety Components Int'l, Inc. Sec. Litig.,* 166 F. Supp. 2d 72, 85 (D.N.J. 2001) ("even if the Plaintiff Class were to recover a larger judgment at trial, which is not guaranteed, the additional

---

[2] *See Krangel,* 194 F.R.D. at 507 ("securities class actions are inherently complex").

delay caused by a trial, post-trial motions and the appellate process, would delay recovery for years").

In sum, courts have consistently held that "[t]he potential for this litigation to result in great expense and to continue for a long time suggest that settlement is in the best interests of the Class." *Slomovics v. All For A Dollar, Inc.,* 906 F. Supp. 146, 149 (E.D.N.Y. 1995). Here, Plaintiffs' Counsel believe that continued litigation of this action would be complex, time-consuming and expensive, with the chances of obtaining a recovery greater than that provided by the Settlement far from assured.[3] Glancy Decl. ¶¶45-48. Indeed, there existed the possibility that Plaintiffs might obtain no recovery at all. The Settlement secures for the Settlement Class a significant and immediate benefit undiminished by further litigation expenses, without the delay, risk and uncertainty of continued litigation.

### 2.   The Reaction of Settlement Class Members Supports Approval of the Settlement

In accordance with the Court's Order preliminarily approving the Settlement, Plaintiffs' Lead Counsel caused to be mailed a total of more than 73,000 copies of the Notice to Settlement Class Members and also published a summary notice of the proposed Settlement and hearing in *Investor's Business Daily* as well as on Plaintiffs' Lead Counsel's website.[4] The Notice and Summary Notice informed Settlement Class Members of their right to object to the Settlement and that the deadline for filing objections was December 1, 2009. Glancy Decl. ¶39. ***Not one Settlement Class member has objected to the fairness, adequacy or reasonableness of the Settlement or to the application for attorneys' fees.*** Keough Decl. ¶10. Moreover, only three

---

[3] Plaintiffs' Counsel also considered that, if this case were not settled, Defendants' insurance coverage could be significantly depleted by defense costs, and other claims on that insurance. Glancy Decl. ¶43.

[4] *See* Keough Decl. ¶5.

requests for exclusion out of potentially thousands of Settlement Class members, have been received. *Id.* at ¶9. It is worth noting that the request for exclusions submitted by Gilbert and Patricia Jennings and Diran Mikaelian provided no explanation for their request. *See* Keough Decl., Exhibit C. Additionally, both the Gilberts and Mikaelian provided no information regarding their purchases and/or sales of Hovnanian securities or otherwise provided any information confirming their membership in the Settlement Class as required in Section VIII of the Notice. *Id.*

The absence of objections to a proposed class settlement is strong evidence that the settlement is fair and reasonable. *See Cendant,* 264 F.3d at 235 (settlement approved where only four class members and two non-class members objected) ("The vast disparity between the number of potential class members who received notice of the Settlement and the number of objectors creates a strong presumption that this factor weighs in favor of the Settlement"); *In re Corel Corp. Sec. Litig.,* 293 F. Supp. 2d 484, 490 (E.D. Pa. 2003) (settlement approved where only five class members objected); *In re Rent-Way Sec. Litig.,* 305 F. Supp. 2d 491, 500-501 (W.D. Pa. 2003) (approving settlement where only three class members objected).

Here, the Settlement Class has embraced the proposed Settlement. The Settlement was only reached after two years of litigation that included extensive analysis of the strengths and weaknesses of Plaintiffs' claims and the risks of continued litigation. Moreover, the Settlement was achieved following arm's-length negotiations with Defense Counsel with the able assistance of the Honorable Nicholas Politan. Respectfully, Plaintiffs' Counsel submit that they did not enter into this Settlement lightly, but, rather, based upon their experience in securities fraud litigation and their prolonged involvement with the facts and issues of this case, made the

informed decision that the Settlement is in the best interests of the Settlement Class.  Glancy Decl. ¶¶49, 72

      **3.**    <u>**The Stage of the Proceedings and the Amount of Discovery Completed**</u>
<u>**Supports Approval of the Settlement**</u>

This factor permits a court to determine whether plaintiffs have had access to sufficient material to evaluate their case and, on an informed basis, to assess the adequacy of the proposed Settlement in light of the case's strengths and weaknesses.  *See Cendant,* 264 F.3d at 235 (citation omitted) (This factor "captures the degree of case development that class counsel have accomplished prior to settlement.  Through this lens, courts can determine whether counsel had an adequate appreciation of the merits of the case before negotiating").

Plaintiffs' Counsel litigated this case for two years and gained more than sufficient information upon which to evaluate the merits of Plaintiffs' claims, the strengths of the defenses asserted and likely to be asserted by Defendants, and the value of Plaintiffs' causes of action for purposes of Settlement.  As discussed at length in the Glancy Decl., in prosecuting this Action, Plaintiffs' Counsel, among other things: (i) thoroughly analyzed Plaintiffs' claims under the applicable law; (ii) performed an intensive and extensive factual investigation which included the review of thousands of pages of documents; (iii) fully briefed the motions to dismiss; and (iv) engaged in hard-fought, arm's-length mediation and settlement negotiations under the experienced guidance of the Honorable Nicholas Politan.  Glancy Decl. ¶26.

Here, although Plaintiffs' Counsel did not engage in formal discovery, Plaintiffs' Counsel gained a thorough understanding of the legal and factual issues encompassed within the potential claims being asserted and an adequate appreciation of their merits.  *See  generally, Taft v. Ackermans,* No. 02- CV-7951, 2007 U.S. Dist. LEXIS 9144, at *18-19 (S.D.N.Y. Jan. 31, 2007) (settlement approved prior to formal discovery); *Krangel,* 194 F .R.D. at 507 ("The fact that this

case is in an early stage of proceedings does not necessarily weigh against approval of the settlement"); *Safety Components Int'l,* 166 F. Supp. 2d at 88 (finding that settlement at an early stage, without formal discovery, avoids "additional expenses [that] would have diminished the funds available to satisfy a judgment").

Thus, Plaintiffs' Counsel are in possession of sufficient information to allow them to recognize the value of the Settlement, and this *Girsh* factor speaks in favor of the Settlement.

### 4.   Plaintiffs Face Risks Establishing Liability

Securities litigation generally involves complex issues of fact and law and this Action is no exception. The Second Amended Complaint For Violations of the Securities Exchange Act of 1934 filed June 12, 2009 (the "Complaint") in the Action generally alleges, among other things, that Defendants issued materially false and misleading statements or omissions of fact during the Settlement Class Period related to the Company's acquisition of First Home Builders of Florida and subsequent events which occurred thereafter in a scheme to artificially inflate the market prices of Hovnanian securities. The Complaint further alleges that the proposed Class Representatives and other Class Members purchased Hovnanian securities at artificially inflated prices, as a result of the Defendants' dissemination of materially false and misleading statements or omissions of fact regarding Hovnanian in violation of Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78j(b) and 78t(a), and Rule 10b-5 promulgated thereunder, 17 C.F.R. § 240.10b-5.

To succeed on claims for securities fraud under Section 10(b) of the Exchange Act, and Rule 10b-5 promulgated thereunder, a plaintiff must show as to each defendant: (i) a misstatement or omission; (ii) of a material fact; (iii) made with *scienter;* (iv) on which plaintiff relied; and (v) that proximately caused the plaintiff's injury. *In re DVI Sec. Litig.,* No. 03-5336, 2005 U.S. Dist. LEXIS 17286, at \*16 (E.D. Pa. May 31, 2005). Each of these elements must be

proven by a preponderance of the evidence. *Herman & MacLean v. Huddleston,* 459 U.S. 375, 387-91 (1983). Thus, to prevail on the Exchange Act claims, Plaintiffs would have the burden of demonstrating, *inter alia,* that Defendants were responsible for material misstatements or omissions of fact concerning the Company; that Defendants knowingly or recklessly misstated or omitted the alleged material facts; that the Class justifiably relied upon the Defendants' misrepresentations;[5] and that the Class suffered damages as a result of Defendants' misconduct. Plaintiffs' Counsel firmly believe - based on their investigation – that Plaintiffs' claims against Defendants have considerable merit, and that Plaintiffs would ultimately prevail in any trial against Defendants. However, Plaintiffs' Counsel also recognize that establishing liability at trial would by no means be guaranteed. Glancy Decl. ¶45.

Plaintiffs would face significant risks in establishing Defendants' liability. Plaintiffs would certainly face challenges from Defendants as to the materiality of any alleged misstatements or omissions and as to whether the Settlement Class suffered damages as a result. *Id*. at ¶57.

Plaintiffs would also undoubtedly face challenges that they have not met their burden of demonstrating that Defendants acted with the requisite *scienter. Id.* Undoubtedly, Defendants will vigorously oppose any claim that they knew or were severely reckless in not knowing that the statements made during the Settlement Class Period were false and misleading, and, at most, will contend that such statements demonstrate nothing more than corporate mismanagement, which is not actionable under *Santa Fe Indus., Inc. v. Green,* 430 U.S. 462 (1977), and its progeny.

---

[5] However, under the fraud-on-the-market theory, Plaintiffs would be afforded the benefit of a rebuttable presumption of reliance. *See generally Basic Inc.* v. *Levinson,* 485 U.S. 224, 241-50 (1988).

Further, even assuming Plaintiffs prevail at trial, even very large judgments recovered after lengthy litigation and trial can be completely lost on appeal or as a result of judgment notwithstanding the verdict. *See Kurz v. Philadelphia Elec. Co.,* 96 F.3d 1544 (3d Cir. 1996) (in ERISA class action, Third Circuit reversed judgment for plaintiffs in bench trial and entered judgment for all defendants on all counts); *see also Robbins v. Koger Prop.,* 116 F.3d 1441 (11th Cir. 1997) (reversing $81.3 million jury verdict for plaintiff after 7 years of litigation); *Scottish Heritable Trust, PLC v. Peat Marwick Main* & *Co.,* 81 F.3d 606 (5th Cir. 1996), *cert. denied,* 519 U.S. 869 (1996) (reversing verdict for plaintiffs on negligent misrepresentation claim against defendant auditor and dismissing claim); *Anixter v. Home-Stake Prod. Co.,* 77 F.3d 1215 (10th Cir. 1996) (overturning, on the basis of 1994 Supreme Court opinion, jury verdict rendered at trial in 1988 for case filed in 1973); *Backman v. Polaroid Corp.,* 910 F.2d 10 (1st Cir. 1990) (multi-million judgment for plaintiffs reversed on appeal after 11 years of litigation).

While Plaintiffs believe that they could have overcome these hurdles, the Settlement removes any uncertainty in this area.

## 5.  **Plaintiffs Face Risks Establishing Damages and Causation**

Should Plaintiffs succeed in establishing liability issues and overcome Defendants' numerous defenses and potential defenses, Plaintiffs still would have to carry their burden to prove damages and causation. *See Ravisent,* 2005 U.S. Dist. LEXIS 6680, at *30 (recognizing difficulty of proving damages and causation in securities action). Although damages and causation are inextricably linked, each issue involves its own distinct problems, and at any trial, Defendants would likely take the opportunity to contest both damages and causation.

The determination of damages, like the determination of liability, is a complicated and uncertain process, typically involving conflicting expert opinions. *In re PNC Finance Servo*

*Group, Inc., Sec. Litig.,* 440 F. Supp. 2d 421, 434-435 (W.D. Pa. 2006). Plaintiffs' Counsel recognize that substantial disagreement in the form of expert testimony would likely exist at trial as to the critical issues of the value of the securities at each point in time that each security was purchased. Although Plaintiffs' Counsel believe Plaintiffs would be able to provide convincing expert testimony to sustain their burden on damages issues, one cannot predict how a jury will weigh competing experts' testimony. Glancy Decl. ¶58. The reaction of a jury to such complex expert testimony is highly unpredictable and expert testimony about damages could rest on many subjective assumptions, any of which could be rejected by a jury as speculative or unreliable. *Id. see also Krangel,* 194 F.R.D. at 508 ("the experts' damage calculations would probably vary significantly and therefore generate a 'battle of the experts'"); *see also In re Computron Software, Inc.,* 6 F. Supp. 2d 313, 320 (D.N.J. 1998). Plaintiffs' Counsel recognize the possibility that, in such a battle, a jury may be swayed by Defendants' experts who would seek to minimize or eliminate the amount of Plaintiffs' losses by showing that the losses were attributable to factors other than the alleged misstatements and omissions.[6] *See United States v. 412.93 Acres of Land,* 455 F.2d 1242, 1247 (3d Cir. 1972) ("The jury ... is under no obligation to accept as completely true the testimony of any expert witness. It may adopt as much of the testimony as appears sound, reject all of it, or adopt all of it"); *accord In re Warner Comm'n Sec. Litig.,* 618 F. Supp. 735, 744-45 (S.D.N.Y. 1985), *aff'd,* 798 F.2d 35 (2d Cir. 1986) (approving settlement where "it is virtually impossible to predict with any certainty which testimony would be credited, and ultimately, which damages would be found to have been caused by actionable, rather than the myriad nonactionable factors such as general market conditions."). Thus, a jury could find that damages were only a fraction of the amount that Plaintiffs claim, or even that neither Plaintiffs nor the Class have suffered any compensable damages.

---

[6] Glancy Decl. ¶58.

Finally, Defendants might attempt to defeat Plaintiffs' claims by asserting that Plaintiffs cannot prove that Defendants' alleged misstatements proximately caused Plaintiffs' damage, *i.e.,* Plaintiffs cannot prove loss causation.  Glancy Decl. ¶47.  This doctrine allows a securities fraud defendant to argue that a portion of the damages is attributable to causes other than the fraud.  In this regard, Defendants could presumably point to such factors as general economic downturn to argue that there were other, actual causes of the decline in prices for Hovnanian securities.  *See Dura Pharm., Inc. v. Broudo,* 544 U.S. 336 (2005).

Defendants have disputed and would continue to dispute the models employed by Plaintiffs' damage expert, the assumptions underlying those models, the amount of artificial inflation of prices of Hovnanian securities, the effect of various market forces on the trading prices of Hovnanian securities, and the effect of the statements Plaintiffs alleged were false and misleading on the trading prices of Hovnanian securities.  S*ee, e.g., Taft,* 2007 U.S. Dist. LEXIS 9144, at * 21-22 ("[T]he damages caused by the alleged fraud are difficult to separate from the loss of value caused by external factors.").

Collectively, these factors could conceivably lead to dismissal of all or part of Plaintiffs' claims on a motion for summary judgment, or even lead a jury to render a defense verdict at trial, giving real meaning to the proposition that "a jury verdict in [plaintiffs'] favor against the settling Defendant is by no means a certainty." *Biben v. Card,* [1991-1992 Transfer Binder] Fed. Sec. L. Rep. (CCH) , ¶96,512 at 92,330 (W.D. Mo. Dec. 10, 1991).  Accordingly, although they believe that their claims have merit, and that they will succeed at trial, Plaintiffs, in light of the potential defenses that can be raised by Defendants, have opted for an immediate and tangible benefit for the Settlement Class, rather than expending a substantial amount of time and effort on a possibly fruitless endeavor.  Glancy Decl. ¶¶45, 49.

6.      **Plaintiffs Face Risks of Maintaining the Class Action Through Trial**

The risks of maintaining this Action as a class action provide additional support to Plaintiffs' position that the Settlement should be approved.   While the Class was certified pursuant to Fed. R. Civ. P. 23(a) and 23(b)(3) for settlement purposes, absent this Settlement Plaintiffs anticipate that Defendants could attempt to use the Supreme Court's decision in *Dura* to narrow the Class substantially had the Settlement not been achieved.   Glancy Decl. ¶45. Although Plaintiffs believe such efforts would fail, such defenses present risks that Plaintiffs' Counsel had to consider in determining whether to enter into the Settlement on behalf of the Settlement Class.  *Id.*

Even if this Action was certified as a class action outside of the Settlement context, the risk that the Court would reconsider or amend its decision at any time before final judgment would remain.  *See* Fed. R. Civ. P. 23(c)(1)(C); *see also Warfarin,* 391 F.3d at 537 ("A district court retains the authority to decertify or modify a class at any time during the litigation if it proves to be unmanageable"); *Ravisent,* 2005 U.S. Dist. LEXIS 6680, at *31 ("[d]efendants might also seek to decertify the class prior to trial").

In short, there is always the risk that the action, or particular claims in the action, might not be maintained as a class through trial.  *Prudential,* 148 F.3d at 321.  Accordingly, the attendant risks of maintaining this Action as a class action, when weighed against a very favorable settlement for the Settlement Class, strongly favors approval of the Settlement.

7.    **The Ability of Defendants to Withstand a Greater Judgment**

This *Girsh* factor addresses whether the Defendants "could withstand a judgment for an amount significantly greater than the [proposed] Settlement." *Cendant,* 264 F.3d at 240.  It is far from clear that the Defendants would have been able to withstand a greater judgment since Hovnanian was adversely affected by the downturn in the housing market.  Glancy Decl. ¶43.  In fact, just two months prior to the parties' May 27, 2009 mediation with Judge Politan, Hovnanian's stock price was trading under one dollar.  *Id.*  In any event, whether or not a higher judgment could have been withstood by Defendants is not given much weight where other factors indicate that the settlement should be approved.  *Ikon,* 194 F.R.D. at 191.  *See In re Wireless Tel. Fed. Cost Recovery Fees Litig.,* 396 F.3d 922, 933 (8th Cir. 2005) (affirming district court's approval of settlement where there was no evidence that defendant could not pay a greater amount); *In re BankAmerica Corp. Sec. Litig.,* 210 F.R.D. 694, 702 (E.D. Mo. 2002) (finding that even where defendant had ability to pay greater judgment, factor did not weigh against approval of settlement).

8.    **The Range of Reasonableness of the Settlement in Light of the Best Possible Recovery and all the Attendant Risks of Litigation Supports Approval of the Settlement**

These two *Girsh* factors look at "how the settlement compares to the best and worst case scenarios" by "evaluat[ing] whether the settlement represents a good value for a weak case or a poor value for a strong case." *Ravisent,* 2005 U.S. Dist. LEXIS 6680, at *32; Warfarin,* 391 F.3d at 538; *see also Safety Components Intl.,* 166 F. Supp. 2d at 92 ("[i]n conducting this evaluation, it is recognized 'that settlement represents a compromise in which the highest hopes for recovery

19

are yielded in exchange for certainty and resolution and [courts should] guard against demanding too large a settlement based on the court's view of the merits of the litigation'"). In addition, courts have found that the determination of a reasonable settlement is not susceptible to a mathematical equation yielding a particularized sum, and that a settlement can be approved even when it amounts to only a small percentage of the recovery sought. *See e.g. In re AT&T Corp. Sec. Litig.,* 455 F.3d 160, 170 (3d Cir. 2006) (district court did not abuse discretion in finding settlement was an "excellent" result in light of the risk of establishing liability and damages despite the fact that settlement possibly represented only a small fraction of the total damages claimed).

Plaintiffs' Counsel believe that the Settlement, which provides an immediate recovery of $4 million in cash, plus interest, provides a very good recovery for the Settlement Class Members, based, as set forth above, on the strengths and weaknesses of the claims asserted, the evidence developed through investigation and discovery in connection with the mediation and the amount of the damages that might be ascribed to Defendants and proven at trial. Glancy Decl. ¶71. Not only will Settlement Class members "receive immediate monetary relief … without undertaking the risks, costs, and delays of further litigation," *Meijer*, 2006 WL 2382718 at *16, but the $4 million represents approximately 3% of the Settlement Class's estimated losses, Godino Decl. at ¶33, which is within the average of settlement amounts to investor losses in securities fraud class actions. *Cendant,* 264 F.3d at 231 (noting that typical recoveries in complex securities class actions range from 1.6% to 14% of estimated damages); *In re Heritage Bond Litig.*, 2005 U.S. Dist. LEXIS 13627, at *27-28 (C.D. Cal. June 10, 2005) (median amount recovered in settlement was 2.7% in 2002, 2.8% in 2003, 2.3% in 2004, 3% in 2005, and 2.2% in

2006).  In addition, the Court should consider that the Settlement provides for a recovery to the Settlement Class now, rather than a speculative payment (if any) many years down the road.

As set forth above and in the Glancy Decl., although Plaintiffs believe that the documentary and testimonial evidence in this Action would demonstrate that Defendants defrauded the public, Plaintiffs acknowledge that if this Action were to proceed against Defendants, Plaintiffs and the Class would run the risk of obtaining no recovery or a significantly smaller one than presented herein.  Defendants would undoubtedly present a completely different picture of the relevant facts and circumstances that led to this Action being filed.  Indeed, Defendants have vigorously defended the case and, absent the Settlement, would continue to do so.  Furthermore, Plaintiffs' Counsel are mindful of the risks, inherent problems of proof, possible defenses to the federal securities law violations asserted, and the difficulty of establishing damages.

Further, many securities class actions brought under the Exchange Act have been lost at trial, on post-trial motion, or on appeal.  For example, in *Robbins v. Koger Prop.,* 129 F.3d 617 (11th Cir. 1997) (Table), the Eleventh Circuit overturned an $81 million jury verdict for the plaintiff class on loss causation grounds and ordered the entire litigation dismissed.  In another case, the class won a $38 million jury verdict and a motion for judgment n.o.v. was denied. *Backman,* 910 F.2d 10.  However, on appeal, the judgment was reversed and the case dismissed, resulting in a total loss after ten years of active litigation.  *Id.*[7]

---

[7] *See also Winkler v. NRD Mining, Ltd.,* 198 F.R.D. 355 (E.D.N.Y. 2000) (granting defendants' motion for judgment as a matter of law after jury verdict for plaintiffs); *AUSA Life Ins. Co. v. Ernst & Young,* 39 Fed. Appx. 667 (2d Cir. 2002) (affirming district court's dismissal after a full bench trial and earlier appeal and remand); *In re Health Management, Inc. Sec. Litig.,* No. 96-CV-889, 1999 U.S. Dist. LEXIS 22729 (E.D.N.Y. Sept. 25, 1999) (jury verdict for auditor in securities case); *In re Biogen Sec. Litig.,* 179 F .R.D 25 (D. Mass. 1997) (jury verdict for defendants); *Radol v. Thomas,* 772 F.2d 244 (6th Cir. 1985)(summary judgment and jury verdict in favor of defendants in action challenging Marathon/U.S. Steel merger); *Landy v. Amsterdam,*

II.     **THE NOTICE TO THE SETTLEMENT CLASS SATISFIED DUE PROCESS**

Due process requires that in a class action, notice of the settlement and an opportunity to be heard must be given to absent class members. *Mashburn,* 684 F. Supp. at 667 ("This Court is of the opinion that the notice given to members of the plaintiff class by publication and by mail, as aforesaid, complied with all the requirements of due process, all requirements of Rule 23 of the Federal Rules of Civil Procedure, and constituted the best practicable notice under the circumstances.").

Rule 23(e) requires that notice fairly apprise class members of the terms of the proposed settlement.  The Court-approved Notice was mailed to more than 73,000 potential Class Members, informing them of the Settlement. *See* Keough Decl. ¶5.  In addition to other pertinent information regarding the Settlement, the Notice included all the information required by 15 U.S.C. § 77z-1(a)(7), including the following: (a) the amount of the settlement proposed to be distributed to the parties to the action; (b) an explanation regarding the attorneys' fees and costs sought; (c) the name, telephone number, and address of Plaintiffs' Lead Counsel who will be reasonably available to answer questions from Settlement Class Members concerning any matter contained in the Notice; (d) a statement explaining the reasons why the parties propose the settlement; (e) a description of the proposed Plan of Allocation; and (f) the rights of every Settlement Class Member, including their right to object to the Settlement, the requested attorneys' fees and expenses, and/or the Plan of Allocation.  Glancy Decl. ¶39.  As such, the Notice fairly apprised the potential Settlement Class Members of the Settlement and their

---

815 F.2d 925 (3d Cir. 1987) (directed verdict for defendants after five years of litigation; affirmed on appeal); *Krinsk v. Fund Asset Mgmt., Inc.,* 715 F. Supp. 472 (S.D.N.Y. 1988), *aff'd,* 875 F.2d 404 (2d Cir. 1989) (verdict for defendants after trial).

individual rights with respect thereto.  In addition, a summary notice was published in *Investor's Business Daily* and posted on Plaintiffs' Lead Counsel's website.  *Id*. at 39; Keough Decl. ¶6.

Courts have found that notice substantially equivalent to that provided for in the instant Settlement constituted the "best notice practicable under the circumstances," satisfying the requirements of Fed. R. Civ. P. 23(c)(2)(B).  *Diamond Chern. Co. v. Akzo Nobel Chems. B. V*, 205 F.R.D. 33, 34 (D.D.C. 2001); *see generally, MCL (Fourth)* § 21.633, at 321-22.  Trial courts are given substantial latitude to determine fair and expedient procedures.  *See, e.g., Petrovic v. Amoco Oil Co.,* 200 F.3d 1140, 1153 (8th Cir. 1999); *Gottlieb v. Wiles,* 11 F.3d 1004, 1013 (10th Cir. 1993) (finding the content and form of notices are left to the court's discretion).  The generally accepted method to provide notice to class members is by direct mail and publication in newspapers.  *Diamond Chern.,* 205 F.R.D. at 33 (approving of such notice plan); see also *Gordon v. Hunt,* 117 F.R.D. 58, 63 (S.D.N.Y. 1987) (combination of mailed and published notice is "long-accepted norm in large class actions").

As required by Federal Rule of Civil Procedure 23(c)(2) the notice informed Settlement Class Members of the claims alleged in the action, the terms of the proposed settlement and their rights as Settlement Class Members to opt out or object to the settlement for $4 million in cash, or otherwise object to the Plan of Allocation and/or the proposed attorneys' fees and expenses. *See Consolo Edison, Inc. v. Northeast Utils.,* 332 F. Supp. 2d 639, 652 (S.D.N.Y. 2004) (Due process requires that the notice to class members "fairly apprise the ... members of the class of the terms of the proposed settlement and of the options that are open to them in connection with [the] proceedings.") (citations omitted).

The notice program took into account the identity and location of the Settlement Class Members and specified the most practicable method of providing notice to them.  Glancy Decl.

23

¶39.  The traditional methods of providing notice used in this case are precisely those recognized as reasonably calculated to notify class members of a proposed settlement under Rule 23(e).  *See MCL (Fourth),* § 21.312, at 294.

### III.   THE PLAN OF ALLOCATION IS FAIR AND REASONABLE AND SHOULD BE APPROVED

Review of the Plan of Allocation falls within this Court's supervisory power over the Settlement, its proceeds, and their ultimate disposition.  *See Cendant*, 264 F.3d at 252-53 (decision reviewed for abuse of discretion); *In re PaineWebber Ltd. P'ships Litig.*, 171 F.R.D. 104, 132 (S.D.N.Y. 1997), *aff'd sub nom.*, *In re PaineWebber Ltd. P'ships Litig*., 117 F.3d 721 (2d Cir. 1997) ("The review of the plan of allocation is squarely within the discretion of the district court.").  As with settlement approval, the standard to be applied is whether the plan is fair, reasonable and adequate.  *In re Suprema Specialties, Inc. Sec. Litig.*, No. 02-168, 2008 WL 906254, at *7 (D.N.J. March 31, 2008).  In making this determination, courts give weight to the opinion of qualified counsel.  "When formulated by competent and experienced counsel," a plan for allocation of net settlement proceeds "need have only a reasonable, rational basis."  *In re Global Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 462 (S.D.N.Y. 2004) (citations omitted); *see also In re Datatec Sys., Inc. Sec. Litig.,* No. 04-cv-525, 2007 WL 4225828 (D.N.J. Nov. 28, 2007)  (approving plan as "rational and consistent with Plaintiff's theory of the case").  Because they tend to mirror the complaints' allegations, "plans that allocate money depending on the timing of purchases and sales of the securities at issue are common." *Id.*; *see also In re General Instrument Sec. Litig.*, 209 F. Supp. 2d 423, 431 (E.D. Pa. 2001) (deeming plan of allocation where "claimants are to be reimbursed on a *pro rata* basis for their recognized losses based largely on when they bought and sold their shares of General Instrument stock" as "even-handed").

The Plan of Allocation, fully described in the Notice, was formulated by Plaintiffs' Lead Counsel in consultation with their damages expert.  Glancy Decl. ¶36.  The proposed Plan of Allocation reflects facts regarding the alleged artificial inflation caused by Defendants' misrepresentations and omissions during the Class Period and the subsequent decline in the trading prices of Hovnanian securities after disclosures of Hovnanian's true condition were made.  *Id*. at ¶¶37-38.

Under the proposed Plan of Allocation, each authorized claimant will receive a *pro rata* share of the "Net Settlement Fund," *i.e.,* the Settlement consideration less certain court-approved fees and expenses, to Settlement Class Members who submit acceptable Proofs of Claim.  *Id*. at ¶35.  The proposed Plan of Allocation recognizes an amount of claim (called the "Recognized Claim") based on the Settlement Class Member's purchases of Hovnanian securities during the Settlement Class Period, that were still held at either of the points in time when corrective disclosures caused the removal of some or all of the alleged artificial inflation.  *Id*. at ¶¶33-38.  The proposed Plan of Allocation is consistent with the methods of calculating damages under the PSLRA and is in conformity with the United States Supreme Court's decision in *Dura Pharmaceuticals.*

"A plan of allocation that reimburses class members based on the extent of their injuries is generally reasonable."  *Computron Software*, 6 F.Supp.2d at 321.  "An allocation formula need only have a reasonable, rational basis, particularly if recommended by experienced and competent counsel."  *In re Broadcom Corp. Sec. Litig.,* No. 01-275, 2005 U.S. Dist. LEXIS 41976, at *7 (C.D. Cal. Sept. 12, 2005) (citation omitted).

Although certain members of the Settlement Class will benefit differently under the Plan of Allocation, based on when they sold their securities, "there is no rule that settlements benefit

all class members equally ...."  *Holmes v. Continental Can Co.,* 706 F.2d 1144, 1148 (11th Cir. 1983); *Kincade v. General Tire & Rubber Co.,* 635 F.2d 501, 506 n.5 (5th Cir. 1981).  It is appropriate for intra-class allocations to be based upon, among other things, the relative strengths and weaknesses of class members' individual claims and the timing of purchases of the securities at issue.  *See Rubenstein v. Republic Nat'l Life Ins. Co.,* 74 F.R.D. 337, 349 (N.D. Tex. 1976). Plaintiffs' Lead Counsel believes that they acted fairly in developing the Plan of Allocation.

The proposed Plan of Allocation attempts to return Settlement Class Members to the status they occupied before the allegedly fraudulent transaction by treating the Settlement as a fund to compensate Settlement Class Members for the difference between the purchase prices they paid for the relevant Hovnanian securities and the trading prices following corrective disclosures.

Here, the proposed Plan of Allocation is fair and reasonable because it calculates each Settlement Class Member's recognized loss depending on the relative strengths of the claims. *See In re Lucent Tech., Inc. Sec. Litig.,* 307 F. Supp. 2d 633, 649 (D.N.J. 2004) ("A plan of allocation that reimburses class members based on the type and extent of their injuries is generally reasonable"); *Corel Corp.,* 293 F. Supp. 2d at 493 (courts "generally consider plans of allocation that reimburse class members based on the type and extent of their injuries to be reasonable") (quoting *Aetna Inc. Sec. Ltig.,* Civ. A. MDL 1219, 2001 U.S. Dist. LEXIS 68, at *36 (E.D. Pa. Jan. 4, 2001).

Additionally, the proposed Plan of Allocation also comports with Section 21D of the PSLRA, 15 U.S.C. § 78u-4(e)(I).  The Plan of Allocation treats Settlement Class Members in an equitable manner.

26

Because the proposed Plan of Allocation is fair and reasonable, Plaintiffs' Counsel respectfully submits that it should be approved by the Court.

## IV.    CERTIFICATION OF A SETTLEMENT CLASS IS APPROPRIATE AND WARRANTED

Class actions certified for the purposes of settlement are well recognized under Rule 23 of the Federal Rules of Civil Procedure. *See, e.g., In re Prudential Ins. Co. of Am. Sales Practices Litig.,* 962 F. Supp. 450, 465 (D.N.J. 1997). The following Settlement Class is defined in the Stipulation:

> All persons and entities who purchased or otherwise acquired Hovnanian Enterprises, Inc. securities from June 30, 2005 through December 19, 2007 inclusive; all persons who purchased or otherwise acquired call options on Hovnanian securities during the period from June 30, 2005 through December 19, 2007, inclusive; and all persons who sold or otherwise disposed of put options on Hovnanian securities during the period from June 30, 2005 through December 19, 2007, inclusive. Excluded from the Settlement Class are Defendants; the members of Individual Defendants' immediate families; all individuals who are either current officers and/or directors, or who served as officers and directors of Hovnanian or their parents or subsidiaries at any time during the Settlement Class Period; any Person, firm, or other entity in which any Defendant has a controlling interest, or any entity which is related to or affiliated with any Defendant; and the legal representatives, agents, affiliates, heirs, successors and assigns of any such excluded Persons. Also excluded from the Settlement Class are those Persons who timely and validly request exclusion from the Settlement Class pursuant to the Notice.

As each of the requirements of Fed. R Civ. P 23(a) and 23(b)(3) have been met, this Class should be certified for settlement purposes.

### A.    The Requirements of Fed. Civ. P. 23(a) are Satisfied

The four prerequisites of Rule 23(a) are that:

1.    the class is so numerous that joinder of all members is impracticable;

2.    there are questions of law or fact common to the class;

3.       the claims or defenses of the representative parties are typical of the claims or defenses of the class; and

4.       the representative parties will fairly and adequately protect the interests of the class.

Fed. R Civ. P. 23(a); *Weiss v. York Hosp.,* 745 F.2d 786, 807 (3d Cir. 1984), *cert. denied,* 470 U.S. 1060 (1985); *Wetzel v. Liberty Mut. Ins. Co.,* 508 F.2d 239, 246 n.7 (3d Cir. 1975), *cert. denied, Liberty Mut. Ins. Co. v. Wetzel,* 421 U.S. 1011 (1975). As described below each of these requirements are met in this case.

### 1.     <u>Numerosity</u>

Rule 23(a)(1) requires that the class is so numerous that joinder of all class members is impracticable. Impracticability, however, does not mean impossibility. *See, e.g., Zinberg v. Washington Bancorp, Inc.,* 138 F.R.D. 397, 404 (D.N.J. 1990); *Vargas v. Calabrese,* 634 F. Supp. 910, 918 (D.N.J. 1986). In *Eisenberg v. Gagnon,* 766 F.2d 770, 785-86 (3d Cir. 1985), *cert. denied, Wasserstorm v. Eisenberg,* 474 U.S. 946 (1985), the Third Circuit found the numerosity requirement satisfied where the proposed class consisted of "more than 90 geographically dispersed plaintiffs." *See also Welch v. Bd. of Dir. of Wildwood Golf Club,* 146 F.R.D. 131, 135 (W.D. Pa. 1993) (the Court of Appeals for the Third Circuit has generally held that the numerosity requirement is met if the proposed class exceeds 100 members).

Here, joinder of all Class Members is plainly impracticable. Hovnanian's common stock was actively traded on NYSE. Inasmuch as there are at least hundreds of potential Class Members, joinder would be impracticable, thereby satisfying this criteria. *In re Pharmaprint, Inc. Sec. Litig.,* No. 00-CV-00061, 2002 U.S. Dist LEXIS 19845, at *14 (D.N.J. Apr. 17, 2002) (certifying class of stockholders based on "known trading volume during the Class Period"). Accordingly, numerosity is easily met.

### 2. __Commonality__

Rule 23(a)(2) provides that a suit may be maintained as a class action if "there are questions of law or fact common to the class." Rule 23 does not require that all members of the class be identically situated, as long as there are substantial common questions of either law or fact. Plaintiffs have alleged that Defendants failed to disclose material information and/or issued misleading statements regarding Hovnanian's financial condition and that these statements and omissions caused Plaintiffs' losses. As such, the allegations of the Complaint revolve around the "common nucleus" of law and fact that is the classic hallmark of a securities fraud class action. "Allegations that a company 'and its management omitted material information from its public disclosures thereby inflating the price of ... stock is the paradigmatic common question of law or fact in a securities class action.'" *In re Res. Am. Sec. Litig.,* 202 F.R.D. 177, 182 (E.D. Pa. 2001) (quoting *Moskowitz v. Lopp,* 128 F.R.D. 624, 629 (E.D. Pa. 1989)). Thus, since the claims of all Class Members arise from the same nucleus of operative facts and pursuant to the same legal theories, commonality is satisfied.

### 3. __Typicality__

Rule 23(a)(3) requires that "the claims ... of the representative parties [be] typical of the claims ... of the class." The typicality requirement is satisfied as long as class representatives and the class "point to the same broad course of alleged fraudulent conduct to support a claim for relief." *Zinberg,* 138 F.R.D. at 401 (internal quotation marks omitted). Factual differences between the class representatives and other members of the class do not preclude a finding of typicality. *See Prudential,* 148 F.3d at 311 ("Even relatively pronounced factual differences will generally not preclude a finding of typicality where there is a strong similarity of legal theories or where the claim arises from the same practice or course of conduct.") (internal quotation marks omitted).

Here, the proposed Class Representatives' claims arise from the same course of conduct and are predicated on the same legal theories as the claims of all other members of the Class, easily satisfying the typicality requirement of Rule 23(a). All the securities claims are raised by the proposed Class Representatives "because they seek to recover damages based on the same materially false and misleading statements and course of conduct that gave rise to the claims of the [C]lass." *Res. Am. Secs. Litig.,* 202 F.R.D. at 187. This is sufficient to satisfy Rule 23(a)(3).

### 4. <u>Adequacy of Representation</u>

Rule 23(a)(4)'s adequacy requirement "serves to uncover conflicts of interest between named parties and the class they seek to represent." *Amchem Prod., Inc.* v. *Windsor,* 521 U.S. 591, 625 (1997) (citing *Gen. Tel. Co. of Sw. v. Falcon,* 457 U.S. 147, 157-58 n.13 (1982)). Adequacy under Rule 23(a)(4) is satisfied if it appears that (a) the class representatives' interests are not antagonistic to those of other members of the class that they seek to represent; and (b) the class representatives' attorneys are qualified, experienced and generally able to conduct the litigation. *See Wetzel,* 508 F.2d at 247. These requirements are satisfied here.

In this case, no conflict exists. The respective claims of the absent Class Members in the Class Period arise from the same wrongful conduct and involve similar legal theories as the claims of the proposed Class Representatives. Because the proposed Class Representatives' claims and interests are aligned with those of absent Class Members, those absent Class Members' interests will be protected. *Brosious v. Children's Place Retail Stores,* 189 F.R.D. 138, 147 (D.N.J. 1999); *Cannon v. Cherry Hill Toyota, Inc.,* 184 F.R.D. 540, 545 (D.N.J. 1999).

With respect to the second aspect of Rule 23(a)(4) -- the adequacy of class representatives' counsel -- the proposed Class Representatives are represented by counsel who are among the most experienced and skilled practitioners in litigating securities fraud class action lawsuits and have been appointed class counsel in numerous other class action cases.

30

**B.      This Action Meets the Requirements Of Fed. R. Civ. P. 23(b)(3)**

Rule 23(b)(3) authorizes certification where common questions of law or fact predominate over any individual questions and a class action is superior to other available means of adjudication. Both Rule 23(b)(3) requirements are satisfied here.

### 1.      <u>Common Questions of Law and Fact Predominate</u>

Rule 23(b)(3) requires that common questions of law or fact predominate over questions affecting only individual class members. In determining whether common questions predominate, courts have focused on the liability issue. *See Bogosian v. Gulf Oil Corp.,* 561 F.2d 434, 456 (3d Cir. 1977). Much of the prior discussion relating to commonality and typicality also serves to demonstrate that the common issues predominate. *See, e.g., Eisenberg,* 766 F.2d at 786. Furthermore, "predominance is a test readily met in ... cases alleging ... securities fraud." *Brosious,* 189 F.R.D. at 147 *(quoting Amchem,* 521 U.S. at 625).

It is clear that the "predominance" requirement of Rule 23(b)(3) is satisfied as common legal and factual questions surely predominate in this action. *Amchem,* 521 U.S. at 625 ("Predominance is a test readily met in certain cases alleging consumer or securities fraud or violations of the antitrust laws."); *see also Brosious,* 189 F.R.D. at 147. Defendants allegedly issued materially false and misleading statements regarding Hovnanian's financial condition during the Class Period in a scheme to artificially inflate the value of Hovnanian's securities.

The questions that would have to be answered to find Defendants' liability are common to all Class Members and predominate over any individual questions that might arise: Did Defendants make a statement about Hovnanian that was not true? Was it a material fact? Did Defendants know, or were they reckless in not knowing, that the statement was not true? Were the prices of Hovnanian securities during the Class Period affected by the statement? Did

Plaintiffs rely on the statement, or were they entitled to rely on the market to reflect the statement in the prices of Hovnanian securities during the Class Period?  Were Plaintiffs damaged by the purchase when the prices dropped in response to corrective disclosures?  What is the measure of the damages?

**2.**    **A Class Action is Superior to Other Available Methods for the Fair and Efficient Adjudication of this Action**

In determining whether the "superiority" requirement of Rule 23 (b )(3) is satisfied, the court must consider the following: (a) the interest of members of the class in individually controlling separate actions; (b) the desirability of concentrating the litigation of the claims in the particular forum; (c) the extent and nature of any related litigation already commenced by class members; and (d) the potential difficulties of managing a class action.  Fed. R. Civ. P. 23(b)(3); *In re Prudential Ins. Co.,* 148 F.3d at 309.  In this case, each of these factors strongly militates in favor of class certification.

First, the expense of individual actions, weighed against the potential recovery, would be prohibitive.  Moreover, there is no reason to burden federal courts with thousands of separate actions.  Second, this case is properly within this District.  Hovnanian has its principal place of business in this District, most of the acts and practices complained of had their origin in this District, and much of the evidence and many of the witnesses relevant to Plaintiffs' claims are located here.  Third, since no related litigation is pending in this District, there is no indication Class Members would prefer to individually control the prosecution of their claims. Class Members were given the opportunity to opt out of the settlement Class, and only three potential Settlement Class Members have exercised this right.  Thus, the extent of related litigation is not an issue.  Finally, no unusual difficulties in managing this litigation have been encountered.  Indeed, as mentioned above, securities fraud cases are considered particularly appropriate for

treatment as class actions.  *See, e.g., Eisenberg,* 766 F.2d at 785 (certifying class anticipating no difficulties, noting federal securities fraud claims are particularly well-suited to proceeding as class actions); *Weikel v. Tower Semiconductor, Ltd.,* 183 F.R.D. 377, 403 (D.N.J. 1988) (same). As explained in *Amchem,* when "[c]onfronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems, see Fed. R. Civ. P. 23(b)(3)(D), for the proposal is that there be no trial." *Amchem,* 521 U.S. at 620. Thus, any manageability problems that may have existed here -- and Plaintiffs' Counsel know of none -- are eliminated by the Settlement

## CONCLUSION

For the reasons set forth above and in the accompanying Glancy Decl., Plaintiffs respectfully request that the Court approve the Settlement in its entirety and grant to Plaintiffs such other and further relief as the Court deems just and proper.

DATED: December 8, 2009                          Respectfully submitted,

                                                 WINDELS MARX LANE &
                                                 MITTENDORF, LLP

                              BY:    _____
                                                 William C. Cagney
                                                     *wcagney@windelsmarx.com*
                                                 120 Albany Street Plaza
                                                  New Brunswick, New Jersey 08901
                                                 Telephone:     (732) 846-7600
                                                 Facsimile:     (732) 846-8877

                                                 *Liaison Counsel*

GLANCY BINKOW & GOLDBERG LLP
Lionel Z. Glancy
    *lglancy@glancylaw.com*
Michael M. Goldberg
    *mmgoldberg@glancylaw.com*
Marc L. Godino
    *mgodino@glancylaw.com*
1801 Avenue of the Stars, Suite 311
Los Angeles, California 90067
Telephone:    (310) 201-9150
Facsimile:    (310) 201-9160

*Lead Counsel*

KIRBY MCINERNEY, LLP
Ira M. Press
    *ipress@kmllp.com*
Randy Berger
    *rberger@kmllp.com*
830 Third Avenue, 10th Floor
New York, NY 10022
Telephone:    (212) 317-2300
Facsimile:    (212) 751-2540

*Attorneys for Plaintiff*